IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA J. WISE,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. CV 06-1158-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Plaintiff Amanda Wise brings this action for judicial review of the Commissioner's final decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

    The Commissioner's decision will be upheld if it follows correct legal standards and is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). His decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). The parties in this case are familiar with the facts of the case and

PAGE 1 - OPINION AND ORDER

they will not be set out here except as is relevant to the discussion below.  The initial burden of proof rests upon the claimant to establish her disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  Here, the administrative law judge ("ALJ") applied the required five-step sequential process and found Ms. Wise was not disabled.  Ms. Wise argues the ALJ erred by: (1) finding her testimony not credible; (2) improperly evaluating Dr. Lyon's medical opinion; (3) finding she did not have additional severe impairments at step two; (4) finding that her mental impairments do not meet or equal a listing at step three; (5) making an improper finding at step five; and (6) rejecting lay witness testimony.[1]

I.      Ms. Wise's Testimony and Credibility

Ms. Wise contends the ALJ wrongly rejected her credibility.  If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).  "Unless there is affirmative evidence showing that the claimant is malingering, the [ALJ's] reasons for rejecting the claimant's testimony must be 'clear and convincing.'"  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).   In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  *Smolen v. Chater*, 80 F.3d 1273,

---

[1] Relying on cases from the First Circuit, Ms. Wise advances an additional argument that the ALJ should have requested medical source statements from her treating and examining physicians as described in the regulations.  *See* 20 C.F.R. § 416.913(b)(6).  This is an argument often advanced by claimants and disfavored in unpublished Ninth Circuit opinions.  At least one court in this district has ruled that where record evidence is adequate and not ambiguous, the ALJ has no duty to perform further development by requesting medical source statements.  *Purvis v. Apfel*, 57 F. Supp. 2d 1088, 1092 (D. Or. 1999).  Here, I find the record contains sufficient medical evidence for proper evaluation such that the ALJ had no duty to request further information from Ms. Wise's physicians.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop the record only triggered when there is ambiguous evidence or the record is inadequate to allow proper evaluation).

PAGE 2 - OPINION AND ORDER

1284 (9th Cir. 1996). An ALJ is not required to believe every allegation made by a claimant or else disability benefits would be available for the asking, a result plainly contrary to Social Security disability law. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Relying on Ms. Wise's and third party testimony, the ALJ found Ms. Wise's daily activities were inconsistent with her alleged extreme limitations. This was not error. The ALJ noted that Ms. Wise, 28-years-old at the time of the hearing, reported significant daily activities, including extensive housecleaning, laundry, shopping, cooking, driving her children to and from school, using the computer and working in her garden. Tr. 19.[2] She also worked as a volunteer at her children's school during the time in question. *Id.* Inconsistently, however, Ms. Wise also testified that she had extreme physical limitations, including an inability to stand for more than 10 to 15 minutes, an inability to sit for more than 15 to 20 minutes, an inability to walk more than a block without severe pain, and frequent and debilitating migraine headaches that often required isolation in a dark room or visits to the emergency room. Tr. 403-10. With regard to these inconsistencies, the ALJ wrote: "[Ms. Wise's] allegations as to the intensity, persistence and limiting effect of these symptoms are disproportionate" and not supported by record evidence. Tr. 19. While some limited level of activity is not fatal to Ms. Wise's assertion of disability, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), her extensive physical activities were inconsistent with the limitations she alleged. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant's level of activity must be consistent with her claimed limitations). Thus, it was not error for the ALJ to question the extreme limitations she alleged during her hearing as inconsistent with the level of activity she performed on a daily basis. The ALJ wrote that Ms. Wise's daily activities "are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations, yet at the hearing her description of the severity of her symptoms was so extreme as to appear implausible." Tr. 19. Because the ALJ's inference as to

---

[2] Citations are to the page(s) indicated in the official transcript of the administrative record.

PAGE 3 - OPINION AND ORDER

Ms. Wise's inconsistent testimony was reasonably drawn from the record, this court must affirm the ALJ's decision even if a different inference could be drawn. *Batson*, 359 F.3d at 1193.

The ALJ also noted Ms. Wise's inconsistent statements regarding her hypersomnia or extreme sleepiness. Tr. 19. Ms. Wise assigns error to the ALJ's consideration of this testimony. However, I note that the ALJ did not err in considering the conflicting testimony Ms. Wise gave throughout the record and at her hearing regarding her sleeping habits. The ALJ is responsible for determining credibility and for resolving ambiguities in the record. *Andrews*, 53 F.3d at 1039. The ALJ offered specific reasons based on substantial evidence for finding Ms. Wise not credible.

II.     Medical Opinion of Dr. Lawrence Lyon, Ph.D.

Ms. Wise contends the ALJ wrongly rejected the "disability opinion" of Dr. Lyon, a DDS examining physician. I disagree. As an initial matter, I note that although Ms. Wise characterizes his opinion as such, Dr. Lyon did not opine as to whether Ms. Wise was disabled or not, and gave no opinion with regard to her limitations. Tr. 201-05. Dr. Lyon diagnosed Ms. Wise with cyclothymic disorder and obsessive compulsive disorder and found that she had difficulties with concentration. Tr. 203, 204. Similarly, the ALJ assessed cyclothymic disorder and obsessive compulsive disorder as severe impairments at step two and found that Ms. Wise had moderate difficulties in maintaining concentration for extended periods of time. Tr. 18, 20. Thus, it appears that the ALJ accorded some weight to Dr. Lyon's opinion. The only aspect of Dr. Lyon's opinion to which the ALJ objected was Ms. Wise's global assessment functioning ("GAF") score of 45. Tr. 20. Physicians consistently assigned Ms. Wise GAF scores between 40 and 65. The Commissioner correctly surmises, and Ms. Wise appropriately concedes, that even if Dr. Lyon's GAF determination were credited, a GAF score of 45 does not mean Dr. Lyon diagnosed Ms. Wise as disabled.

While a GAF score of 41-50 is defined as including serious symptoms or any serious impairment in social, occupational or school functioning, it does not necessarily correlate with a finding of disability or an inability to work. Therefore, even if Dr. Lyon's GAF determination

was entirely correct, crediting that determination does not compel a finding of disability such that even if the ALJ's failure to credit Dr. Lyon's GAF assessment was error, that error was harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (an error is harmless where it would not affect the ALJ's ultimate decision).

III.     Additional Severe Impairments at Step Two

Ms. Wise argues that the ALJ erred in failing to find carpal tunnel syndrome, migraines, idiopathic hypersomnia and lower back problems as severe impairments.

An impairment is severe for the purposes of step two of the evaluation process if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities are the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b). These include physical functions, such as seeing, hearing, speaking, walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). The burden to show a medically determinable severe impairment is on the claimant. *Bowen*, 482 U.S. at 146. A severe impairment must be shown by medically acceptable clinical and laboratory diagnostic techniques, established by signs, symptoms and laboratory findings, not only by statements of the claimant. 20 C.F.R. § 404.1508.

Ms. Wise was diagnosed with carpal tunnel syndrome in September 2004 and surgical release was recommended. Tr. 17. Dr. Schwartz performed bilateral carpal tunnel release surgery on September 21, 2004. *Id.* On September 29, 2004, Dr. Schwartz noted that Ms. Wise was doing well post-surgery and was using her fingers. Tr. 273. Dr. Schwartz advised her to continue wearing splints at night for two more weeks, and to return for a follow up appointment in six weeks. *Id.* Ms. Wise failed to keep a November 3, 2004, follow up appointment with Dr. Schwartz and failed to keep an October 6, 2004, follow up appointment with Dr. Melby, Ms. Wise's primary care physician. Tr. 227. At her hearing on November 17, 2004, Ms. Wise alleged residual problems with her carpal tunnel surgery and alleged that she had rescheduled the

November 3, 2004, appointment with Dr. Schwartz and had seen him just prior to the hearing. Tr. 399. The ALJ specifically left the record open after the November 2004 hearing and again after the supplemental hearing held in February 2005 to receive recent records from Ms. Wise's physicians–specifically any visits to Dr. Schwartz–regarding the aftermath of her carpal tunnel surgery. Tr. 430, 447. However, Ms. Wise never provided any medical reports to support her post-surgery complaints, making her testimony the only evidence in the record. As noted above, the ALJ correctly found Ms. Wise not credible. With no other evidence in the record, the ALJ correctly concluded that Ms. Wise's carpal tunnel syndrome was not severe. Tr. 17.

With regard to migraine headaches, Ms. Wise's testimony was that she had severe migraines on a frequent basis, that sometimes she was able to treat the migraines successfully with Vicodin, and that the worst migraines required her to go to the emergency room at least every other month. Tr. 408-409. However, the medical records indicated that Ms. Wise only went to the emergency room for migraine treatment on two occasions in 2002. Tr. 347, 349-50. The ALJ wrote that Ms. Wise's migraines were well controlled with medication. Tr. 16. In fact, more than one physician found that medication controlled Ms. Wise's migraines. Tr. 196 (Dr. Mishra: migraine headaches currently stable with symptomatic treatment); Tr. 232 (Dr. Melby: migraine headaches controlled with Vicodin). Thus the ALJ's finding was supported by substantial evidence in the record. Because Ms. Wise presented no evidence beyond her testimony, which the ALJ properly found not credible, the ALJ's finding that Ms. Wise's migraines were not severe at step two was without error.

Ms. Wise was diagnosed with idiopathic hypersomnia[3] in June 2004. In August 2004,

---

[3] Idiopathic hypersomnia is excessive sleeping (hypersomnia) without obvious cause. It is different from narcolepsy in that idiopathic hypersomnia does not involve suddenly falling asleep or losing muscle control associated with strong emotions (cataplexy).

PAGE 6 - OPINION AND ORDER

Dr. Cardosi treated her with Provigil,[4] described her response as excellent, and recommended that she take an additional one-half to one pill in the afternoon if necessary or take a nap to combat afternoon sleepiness. Tr. 286. He also noted that she was feeling more energetic on awakening in the morning, and was no longer experiencing drowsiness while driving. *Id.* The ALJ relied on Dr. Cardosi's report to find that Ms. Wise's excessive somnolence was not a severe impairment. Tr. 17. Again, Ms. Wise fails to present any evidence to the contrary beyond her testimony such that the ALJ's finding that hypersomnia was not a severe impairment was without error.

With regard to her back pain, the ALJ noted that Ms. Wise had a history of low back pain which various physicians treated with pain medication, physical therapy, and recommendations of exercise. Tr. 16-17. The ALJ noted that Ms. Wise's physical problems were not the basis of her disability claim when filed in March 2003,[5] and that in December 2004, she told Dr. Melby, one of her treating physicians, that her disability claim was based on her mental condition but that her attorney wanted to emphasize her back problems. Tr. 17, 365. Dr. Melby noted during the examination in December 2004, after Ms. Wise's first hearing, that he had not "had a true visit relating to her back prior to this visit." Tr. 365. The ALJ also noted that Dr. Melby subsequently ordered a lumbar CT scan which showed moderate L5-S1 stenosis. Tr. 17. However, Ms. Wise submitted no other medical reports interpreting the CT scan to show that she had severe physical problems, or documenting whether limitations may be caused by her back problems. Even without further evidence of physical impairment due to lower back pain, the ALJ assessed Ms. Wise as only being capable of performing light exertional work with the additional postural limitations of no climbing, and only occasional bending, balancing, stooping, kneeling, crouching and crawling. Tr. 20. Because Ms. Wise failed to support her claim of severe impairment due to

---

[4] Provigil is used to treat excessive sleepiness caused by certain sleep disorders.

[5] Ms. Wise's application for disability was based on bipolar disorder, obsessive compulsive disorder, and migraines. Tr. 82. Ms. Wise also wrote in her disability paperwork filed in April 2003 that she had no physical problems. Tr. 111.

PAGE 7 - OPINION AND ORDER

lower back problems with substantial evidence beyond her own testimony, and because the ALJ considered her physical problems in formulating her RFC, the ALJ's findings at step two that Ms. Wise's back problems were not severe were without error.

IV.     Mental Impairments at Step Three

Ms. Wise contends that the ALJ erred in failing to make more detailed conclusions with regard to his finding that her cyclothymic disorder and obsessive compulsive disorder did not meet the listings for affective disorders under § 12.04, and anxiety related disorders under § 12.06. 20 C.F.R. § 404, Subpt. P, App. 1.  I disagree.  The ALJ fulfilled his responsibility of making findings regarding the degree of limitations in the four functional areas as required by statute: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. § 416.920a(c).  After considering the criteria in sections 12.04 and 12.06, the ALJ concluded that Ms. Wise failed to demonstrate the marked level of impairment described in the "B" criteria or in the "C" criteria of either of these listings.  Tr. 18-19.  In making this finding, the ALJ relied on the medical opinions of Dr. Lahman and Dr. LeBray, DDS reviewing psychologists, who assessed Ms. Wise under the "B" criteria as having no restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, no episodes of decompensation of extended duration, and found that she did not meet the "C" criteria for a listing.  Tr. 20, 221-22. The ALJ correctly relied on these assessments in making his finding as to whether Ms. Wise's mental impairments met a listing.

Ms. Wise argues that the opinions of other physicians show that she had marked restrictions in her activities of daily living, marked difficulties in maintaining concentration, persistence or pace, and moderately to marked difficulties in maintaining social functioning. However, none of the physician reports to which Ms. Wise refers the court support her argument. Drs. Ferber, Perri, and Lyon found that Ms. Wise had various mental impairments, but none of them opined that she had restrictions that would be considered "marked" in the categories

assessed under the listings. Thus the ALJ's finding at step three regarding Ms. Wise's mental impairments was not in error.

V.      Finding at Step Five

Ms. Wise contends she is not capable of performing the occupations identified by the ALJ at step five. She argues the ALJ failed to provide a correct hypothetical to the VE based on her impairments and her RFC, such that the VE's testimony could not form the basis for the ALJ's conclusion at step five that she was capable of working as a housekeeper, a small products assembler, or an office helper. Tr. 21-22. Ms. Wise's argument at step five merely rehashes her arguments regarding the ALJ's assessment of the medical and testimonial evidence at steps two and three. Because these arguments were addressed and dismissed above, they will not be revisited here. If a claimant fails to present evidence that she suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). Here, the ALJ relied on Ms. Wise's legitimate impairments that were supported by substantial evidence in the record in posing his hypothetical to the VE. Thus the ALJ's finding at step five based on the VE's testimony is proper.

VI.     Lay Witness Testimony

Kathleen Whitten, Ms. Wise's mother, testified at the first hearing. Tr. 426-29. The ALJ did not discuss Ms. Whitten's testimony which Ms. Wise argues was error. Relying on *Stout v. Commissioner of Social Security Administration*, 454 F.3d 1050 (9th Cir. 2006), Ms. Wise contends the ALJ's failure to discuss Ms. Whitten's testimony necessitates a remand. I disagree. In *Stout*, the lay witnesses described with specificity the claimant's inability to perform his past relevant work. *Id.* at 1053-54. One witness had been the claimant's supervisor and co-worker for fifteen years. *Id.* Both witnesses provided testimony, consistent with medical evidence, that the claimant was not able to deal with the demands of his workplace, and gave specific examples of the types of tasks the claimant could no longer perform in the workplace. *Id.* Thus the lay

PAGE 9 - OPINION AND ORDER

testimony in *Stout* that went unmentioned was directly relevant to the VE testimony and to the ALJ's erroneous conclusion that the claimant could return to his previous work. *See also Schneider v. Comm'r. of Soc. Sec. Admin.*, 223 F.3d 968, 972-73 (9th Cir. 2000) (lay testimony from former employers gave concrete examples of claimant's limitations in a work environment). Ms. Whitten's testimony, on the other hand, lacked detail, was based on visiting Ms. Wise for brief periods of time at her home, and provided little in the way of concrete information regarding Ms. Wise's physical or mental limitations. Under *Stout*, a court may find that an ALJ's failure to discuss lay testimony was harmless error if the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056. Because Ms. Whitten's testimony would not have supported a determination of disability, the ALJ's failure to discuss it was harmless error.

## CONCLUSION

For the foregoing reasons, the Commissioner's determination that Ms. Wise does not suffer from a disability and is not entitled to SSI under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

DATED this  2nd  day of August, 2007.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court